**The STATE of Texas, Appellant,**

v.

**Lawrence KURTH, Appellee.**

No. 04–97–00123–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 23, 1998.

Rehearing Overruled Nov. 2, 1998.

Angela Moore, Asst. Crim. Dist. Atty., San Antonio, for Appellant.

Jay Norton, Law Office of Alan Brown, San Antonio, Jean S. Brown, Law Offices of Jean Brown, San Antonio, John A. Convery, Hasdorff & Convery, P.C., San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Attorney Lawrence Kurth came to the Bexar County Courthouse for a court appearance and voluntarily placed his briefcase on the conveyor belt leading into the x-ray machine. As Kurth's briefcase appeared on the monitor, the guard saw what looked like a gun and immediately called courthouse security. After a subsequent physical search confirmed the presence of a handgun in Kurth's briefcase, and Kurth admitted he was not a peace officer, he was arrested for and charged with unlawfully carrying a weapon in violation of section 46.02 of the Texas Penal Code.

Before trial, Kurth moved to suppress the evidence seized during the search, arguing it was obtained in violation of his rights under the United States and Texas Constitutions and was, therefore, inadmissible under article 38.23 Texas Code of Criminal Procedure. The trial court granted Kurth's motion, and the State appealed. We reverse, holding the x-ray search was reasonable and Kurth gave his qualified consent to this search by voluntarily placing his briefcase on the conveyor belt. As a result, the image of a gun in Kurth's briefcase supplied the reasonable suspicion necessary to justify the subsequent temporary investigatory detention of Kurth and the physical search of his briefcase.

### FACTUAL AND PROCEDURAL BACKGROUND

Antonia De La Cruz, the private security guard assigned to monitor the x-ray machine

located at the security checkpoint at the south entrance to the Bexar County Courthouse, saw a man she later identified as Kurth voluntarily place his briefcase on the conveyor belt leading into the machine. When the briefcase appeared on the monitor, De La Cruz saw an image that looked like a gun and immediately called the Bexar County Sheriff's Office. De La Cruz talked with Kurth briefly, and he said he had forgotten his gun was in his briefcase. At some point, De La Cruz opened Kurth's briefcase to confirm the image she had seen on the monitor was in fact a gun. It was.

Certified peace officer Elena Hernden of the Bexar County Sheriff's Department responded to De La Cruz's call. When Hernden arrived, Kurth's hand was either in his briefcase or in one of its side pockets. Hernden therefore grabbed Kurth's wrist and told him to let go. Kurth complied, and Hernden gave the briefcase to Officer Rojas, who opened it and found an unloaded German-made Deutsch handgun. After Kurth admitted he was not a peace officer, he was arrested, handcuffed, magistrated, and released on bond. Throughout the x-ray and physical searches, detention, and arrest, Kurth cooperated fully.

Before trial, Kurth moved to suppress all evidence seized during the episode, arguing it was obtained as a result of searches that violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution; article I, section 9 of the Texas Constitution; and article 38.23 Texas Code of Criminal Procedure. At the hearing on Kurth's motion, De La Garza and Hernden testified to the facts set forth above. De La Garza also testified that on the day of Kurth's arrest she was employed by either Burns International Security Services or Wells Fargo Security, which had been employed by the Bexar County Sheriff's Department to assist with courthouse security, and she had been instructed by the Bexar County Sheriff's Department that she was authorized to deny access, stop, and detain— but not restrain or arrest—a person trying to enter the courthouse with a weapon. De La Garza further testified she detained Kurth only because of the image she believed to be

a gun and, once she saw the gun, he was not free to leave; Kurth did not otherwise say or do anything suspicious.

According to Hernden, the Bexar County Commissioners Court determined that entry into the courthouse by the public at large, including attorneys in private practice, would be conditioned on clearing a security checkpoint; and the Court authorized placing the x-ray machine at the south courthouse entrance. The Commissioners Court also instructed the Bexar County Sheriff's Department to enforce its order, and it was therefore the Sheriff's Department that placed a sign on the outside of the south courthouse entry door—"No firearms by order of Sheriff Ralph Lopez." The Sheriff's Department also hired private security guards to assist with maintaining courthouse security, and it authorized these private security guards to detain a person trying to enter the courthouse with a weapon. Hernden confirmed the private security guards are not authorized to restrain such a person; the only arrest they could have made would be a citizen's arrest.

At the conclusion of the hearing, the trial court granted Kurth's motion. The State appealed, and the trial court later filed the following findings of fact:

1. The State presented no order from Commissioners Court pertaining to courthouse security;

2. The State presented no authority or authorization to limit access to the public courthouse or to conduct an administrative search;

3. The State presented no evidence of any contract with a security company for private security service;

4. The State presented no order of the Sheriff or Commissioner's Court for private security guard services;

5. The security guard (Ms. De La Cruz) could not recall the name of the company she worked for at the time of the arrest;

6. The security guard told Defendant Kurth that he was not free to leave and opened his briefcase;

7. The security guard was acting as an agent of law enforcement;

8. The State failed to introduce the handgun in question or a photograph of the handgun.

The trial court concluded:

1. The State failed to meet its burden of proof to show any authority or lawful right for the search;

2. The State failed to meet its burden of proof to show a lawful stop of Defendant Kurth and failed to meet its burden of proof to show a lawful search of his briefcase;

3. The Defendant did not consent to his stop or to the search of his briefcase;

4. The State failed to obtain a search warrant and failed to meet their [sic] burden of proof on justification for a warrantless search.

### STANDARD OF REVIEW

On appeal, we review the trial court's ruling on a motion to suppress under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Under this standard, we "view the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical fact that are supported by the record. *Id.* However, when the resolution of the factual issue does not turn upon an evaluation of credibility or demeanor, we review the trial court's determination of the applicable law, as well as its application of the appropriate law to the facts it has found, de novo. *Id.*

### THE X–RAY SEARCH

The State first argues the x-ray search of Kurth's briefcase was reasonable and authorized and, therefore, permitted by the United States and Texas Constitutions. We agree.

Evidence obtained in violation of the federal or state constitution or laws is inadmissible in a criminal case. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp. 1998). Article 38.23 thus renders inadmissible evidence obtained in violation of the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution, both of which protect the right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. "Warrantless searches are per se unreasonable unless the search falls within one of 'a few specifically established and well-delineated exceptions.'" *Gibson v. State*, 921 S.W.2d 747, 757 (Tex.App.—El Paso 1996, writ denied) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The burden to prove that a warrantless search is encompassed by an exception rests upon the State. *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim.App.1986). If the exception the State seeks to prove is consent, it must prove by clear and convincing evidence that the accused voluntarily consented to the warrantless search. *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim.App.1997).

### *Reasonableness of the X–Ray Search*

The use of an x-ray machine at a courthouse entrance is a warrantless search within the meaning of the Fourth Amendment. *Gibson*, 921 S.W.2d at 757. In *Gibson*, the El Paso Court of Appeals confronted another attorney's challenge to the x-ray machine and metal detector (magnetometer) searches at the entrance to the El Paso County Courthouse. *Id.* at 751–52. In her opinion for the court, Justice McClure wrote:

> If we demand that the public at large come onto the courthouse premises to participate in the administration of justice, we have a duty to ensure minimal levels of protection during their participation. And while justice should eternally blind itself to differences in race, ethnicity, gender, and economic disparity, it cannot be blind to the reality of potential violence.

> ... We decline to wait until the tragic death of a litigant, witness, juror, attorney, courthouse employee, judge, spectator, member of the press, or an individual merely in the building to transact business before we sanction the use of reasonable security measures.

*Id.* at 765. After an exhaustive analysis, the court concluded the x-ray and magnetometer

administrative searches at the courthouse entrance "present a reasonable method of achieving the State's interest in protecting its property and persons entering that property." *Id.* at 763. These searches are, therefore, "permissible" and "not unreasonable" under the Fourth Amendment to the United States Constitution," *id.,* and are "equally viable" under article I, section 9 of the Texas Constitution. *Id.* at 764.

■ We cannot expand or improve upon Justice McClure's scholarly and complete review of administrative searches, and we therefore adopt her opinion in its entirety. As a result, we, too, take judicial notice of the unfortunate need for courthouse searches, *see id.* at 755; we recognize our own responsibility to help ensure the safety of all who enter the Bexar County Courthouse and Justice Center, *see id.* at 765; and we hold the x-ray and magnetometer searches at the entrances to the Bexar County Courthouse and Justice Center "are not unreasonable and are permissive pursuant to the Fourth Amendment to the United States Constitution," *id.* at 763, and "equally viable" under article I, section 9 of the Texas Constitution. *Id.* at 764.

### *Authorization for the X–Ray Search*

■ Kurth insists, however, the State failed to meet its burden to prove the x-ray search in this case was authorized, as the trial court concluded. We disagree. As the trial court correctly found, De La Cruz "was acting as an agent of law enforcement," and the uncontradicted testimony establishes she was acting in this capacity because (1) the x-ray machine was placed at the courthouse entrance by order of the Commissioner's Court; (2) the Court charged the Bexar County Sheriff's Department with the responsibility for enforcing its order; and (3) pursuant to the Court's order, the Bexar County Sheriff's Department obtained the assistance of the private security firm for which De La Cruz worked as a private security guard. Therefore, the uncontradicted testimony establishes, and we hold, De La Cruz acted in her capacity as "an agent of law enforcement" pursuant to the authorization of the Bexar County Sheriff's Depart-

ment and the Bexar County Commissioners Court. *See* TEX. LOC. GOV'T CODE ANN. § 291.003 (Vernon 1988) ("The county sheriff shall have charge and control of the county courthouse, subject to the regulations of the commissioners court."); *see also Woods v. State,* 970 S.W.2d 770, 774 (Tex.App.—Austin June 25, 1998, no pet. h.) (private security guard employed by the Travis County Sheriff's Department and working with and under the supervision of a deputy sheriff assigned to courthouse security acted as agent of the State).

The uncontroverted testimony of De La Cruz and Hernden thus belies the trial court's findings that the State presented "no authority or authorization to limit access to the public courthouse or to conduct an administrative search" and "no evidence of any contract with a security company for private security service." Just as clearly, whether De La Garza knew which of her two previous employers she was working for at the time of Kurth's detention is as immaterial as whether the State tendered the authorizing orders and contracts. Neither fact controverts De La Cruz's and Hernden's testimony regarding the Commissioners Court's authorization of the courthouse security checkpoint, the Court's instruction to the Bexar County Sheriff's Department to enforce its order, or the Sheriff's Department employment of De La Cruz's employer to assist with courthouse security. In short, neither fact remotely suggests the search of Kurth's briefcase was unauthorized or illegal.

### CONSENT TO THE X–RAY SEARCH

■ The State also argues the trial court erred in finding Kurth did not consent to the initial x-ray search of his briefcase. We agree. The uncontroverted testimony before the trial court establishes Kurth voluntarily placed his briefcase on the conveyor belt leading into the x-ray machine. In doing so, Kurth gave the requisite qualified consent to the initial x-ray search of his briefcase. *See Gibson,* 921 S.W.2d at 756–57. Contrary to Kurth's argument and the trial court's implicit conclusion, qualified consent need not be verbal; it can be shown, and was shown in

this case, by voluntary conduct conclusively establishing consent to the search. *See id.*

### SUBSEQUENT PHYSICAL SEARCH AND DETENTION

■ Finally, Kurth argues the subsequent physical search of his briefcase and his detention were illegal because the x-ray image of what De La Cruz believed to be a gun cannot supply the reasonable suspicion necessary to justify a temporary investigative detention and warrantless search since the initial x-ray search was unlawful, unauthorized, and without his consent. *See Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997) (setting forth test to determine the reasonableness of an investigative detention); *see also Worthey v. State,* 805 S.W.2d 435, 439 (Tex.Crim.App.1991) (under appropriate circumstances, weapons frisk extends to purse). We reject this argument because, as we have held, the uncontroverted testimony establishes Kurth consented to the initial x-ray search, which was authorized and reasonable.[1]

### CONCLUSION

The material, uncontroverted testimony establishes Kurth consented to the initial x-ray search of his briefcase by voluntarily placing it on the conveyor belt leading into the x-ray machine, and this search was reasonable and authorized. Therefore, the undisputed evidence also establishes the subsequent physical search of Kurth's briefcase and his temporary investigatory detention were justified by the reasonable suspicion arising out of the x-ray image of a gun in Kurth's briefcase. Consequently, Kurth's rights under the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 9 of the Texas Constitution were not violated, and the evidence obtained during the search is not rendered inadmissible by article 38.23 of the Texas Code of Criminal Procedure. We therefore hold the trial court abused its discretion in granting Kurth's mo-

tion to suppress, reverse the trial court's order, and remand this cause to that court for further proceedings consistent with this opinion.

---

1. Kurth also argued in the trial court, and now argues on appeal, he was privileged to carry a gun because he is an "officer of the court" and was carrying it "while in the actual discharge of his official duties" under section 46.03(b) of the Texas Penal Code. The trial court made no find-ings on this issue, presumably because it realized that whether Kurth has a defense to the offense with which he is charged is not an issue that is appropriately reviewed at this stage in the proceedings.