COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-180-CR
  
  
BOBBY WAYNE TURNBOW A/K/A                                           APPELLANT
ROBERT WAYNE TURNBOW
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant 
Bobby Wayne Turnbow was charged with the offense of possession of between four 
and 200 grams of cocaine. After the trial court denied Appellant’s written 
motion to suppress physical evidence that was obtained during a search of his 
truck, Appellant pleaded guilty pursuant to a plea agreement. The trial court 
sentenced Appellant to twenty years’ confinement in the Institutional Division 
of the Texas Department of Criminal Justice. Appellant raises one issue, 
challenging the denial of his motion to suppress. We will affirm.
II. Motion to 
Suppress
        During 
a traffic stop, the police searched Appellant’s truck and found drugs and drug 
paraphernalia. After being charged with possession of a controlled substance, 
Appellant filed a written motion to suppress the evidence seized in connection 
with this case. The trial court conducted a pretrial suppression hearing and 
denied Appellant’s motion. The court also signed findings of fact and 
conclusions of law related to its ruling. In his sole issue, Appellant complains 
that the search of his truck was undertaken as the result of an illegal 
detention and that the evidence seized during that search was therefore 
illegally obtained and should have been suppressed.
        A. Standard of 
Review
        We 
review a trial court’s ruling on a motion to suppress evidence for an abuse of 
discretion. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 
2000); Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). We will 
not overturn the trial court’s ruling unless its decision was outside the zone 
of reasonable disagreement. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. 
Crim. App. 2001). We afford almost total deference to a trial court’s 
determination of the historical facts that the record supports, especially when 
the trial court’s fact findings are based upon an evaluation of credibility 
and demeanor. Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); 
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We afford the 
same amount of deference to the trial court’s rulings on mixed questions of 
law and fact, if the resolution of those questions turns on an evaluation of 
credibility and demeanor. Carmouche, 10 S.W.3d at 327; Guzman v. State, 
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo the trial court’s 
application of law to those facts in the determination of reasonable suspicion 
and probable cause. Carmouche, 10 S.W.3d at 327; Guzman, 955 
S.W.2d at 89. We will uphold the trial court’s ruling if it is correct on any 
theory of the law applicable to the case, even if the trial court gave the wrong 
reason for its ruling. Laney, 117 S.W.3d at 857 (citing Romero v. 
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).
        B. Factual 
Background
        At 
the suppression hearing, the State offered the testimony of Officers Tim Oglesby 
and Lowell Moss, while Appellant called his ex-wife LaDonna Abbott to testify. 
Additionally, the State offered two written statements made by Appellant after 
he was arrested.[2]  Before it called its first 
witness, the State stipulated that Appellant’s arrest was made without a 
warrant.
                1.     The Two 
Officers
        Deputy 
Lowell Moss testified that an “attempt to locate” had been put out on a red 
and white Ford pickup truck, which was suspected of possible involvement in a 
burglary. Around 1:40 p.m. on April 11, 2002, Deputy Moss observed a truck 
matching the description of that vehicle in the “attempt to locate“ at the 
intersection of 920 and Zion Hill Road in Weatherford, Texas. Deputy Moss was 
behind the truck and saw the driver turn left without turning on his turn 
signal. Because of the “attempt to locate” and the driver’s failure to 
signal, Deputy Moss turned on his lights and pulled over the truck.
        Deputy 
Moss observed that Appellant was driving the truck and that another male and a 
female were riding in the truck. Deputy Moss testified that he asked Appellant 
to get out of the truck and to come to his patrol car and that he decided to 
write Appellant a warning citation for failing to use his turn signal. Deputy 
Moss testified that it took him around fifteen minutes to write the warning 
because he was making sure it was correctly filled out and because he ran a 
“1027 on [Appellant’s] driver’s license.”
        During 
the traffic stop, Investigator Tim Oglesby arrived at the scene to question 
Appellant and his passengers about their possible involvement with the burglary 
of a washer and dryer. While Investigator Oglesby could not remember whether he 
found out about the traffic stop from Deputy Moss or from overhearing it on the 
police radio, he testified that it took him approximately eight to ten minutes 
upon learning of the stop to get to the intersection where Appellant was 
stopped. Deputy Moss testified that he did not know how long it took 
Investigator Oglesby to arrive but guessed that it was around fifteen minutes 
after he made the traffic stop. Deputy Moss also stated that he did not know how 
Investigator Oglesby knew of the traffic stop.
        Investigator 
Oglesby testified that when he arrived, Deputy Moss was still in the process of 
writing Appellant a warning citation. Deputy Moss testified that Investigator 
Oglesby arrived “right after [he] had finished writing the citation,” but he 
could not recall at what point he received the warrants check that he had 
requested. Deputy Moss testified that for the fifteen minutes it took to run the 
warrant check and to write the warning citation, Appellant was not free to 
leave.
        After 
briefly speaking with Appellant, Investigator Oglesby went to the truck to 
question LaDonna Abbot and Ray Washington, who were the two passengers. 
Investigator Oglesby asked Washington to get out of the truck, and he questioned 
Abbot about a burglary involving a stolen washer and dryer. According to 
Investigator Oglesby, Abbott told him that she had no personal knowledge about 
the burglary. Investigator Oglesby then asked her if there was anything illegal 
in the truck.
        While 
Abbott stated that she did not believe so, Investigator Oglesby testified that 
Abbott’s demeanor and reaction visibly changed and caught his attention. 
Investigator Oglesby testified that, whereas Abbot at first had been calm, 
responsive, and was making eye contact, she appeared nervous, began to shake, 
and would not make eye contact when asked about anything illegal being in the 
truck. Investigator Oglesby testified that while all of this was going on, 
Appellant had not yet approached his truck, indicating that he was ready to 
leave, but that if he had, the police would have left.
        Investigator 
Oglesby testified that, while he spoke with Abbott, she began taking things out 
of her purse and setting them on the seat next to her. Thinking that Abbot’s 
behavior was strange and feeling concerned for his safety, Investigator Oglesby 
told Abbott not to reach into her purse again and asked her whether “she had 
any problem with [him] looking in her purse.” According to Investigator 
Oglesby, Abbott reacted, without saying anything, by handing her purse to him.
        As 
he looked through Abbott’s purse, Investigator Oglesby discovered a black 
zipper pouch, in which he found a used glass crack pipe, syringes, and a clear 
plastic baggie containing “rock-type substances,” which he believed to be a 
controlled substance. Investigator Oglesby testified that, at that point, he 
asked Abbott to get out of the truck so that he could pat her down. He then 
asked her to empty her pockets and to place the contents on the back of his 
patrol car. When Investigator Oglesby was handcuffing Abbott, she turned 
sideways, reached into her pocket, and dropped a clear cellophane wrapper on the 
ground. Investigator Oglesby picked up the wrapper and, based on his experience 
and training, determined that the wrapper contained marijuana.
        Appellant, 
having viewed Abbott’s arrest and the discovery of the contraband, voluntarily 
yelled out “Mr. Oglesby, wait, all of that is mine.” According to 
Investigator Oglesby, Appellant explained that he had the drugs in his shirt 
pocket when Deputy Moss pulled him over and that he gave the contents of his 
pockets to Abbott. Appellant told Investigator Oglesby that he had given Abbott 
the crack, but he insisted that the marijuana belonged to Abbott. Washington was 
not arrested; however, both Appellant and Abbott were arrested and taken in for 
further questioning. According to Investigator Oglesby, Appellant wanted to 
accept responsibility so that Abbot, who was his wife at the time, would be 
released.
        Investigator 
Oglesby briefly searched the truck at the site of the traffic stop, but he did 
not find anything. After a wrecker had impounded Appellant’s truck, 
Investigator Oglesby assisted with a more thorough search of the truck, which 
resulted in the discovery of a cigarette pack under the passenger seat. The 
cigarette pack contained a small crack pipe and six green ziplock baggies, with 
each baggie containing “a rock-type substance.”
        Appellant 
later signed a written statement admitting that the crack cocaine was his and 
stating that Abbot “was not involved in the possession or sale of this 
drug.” He admitted that he had given his drugs to Abbott to place in her purse 
and that a glass pipe and a set of scales were also his. Four days later, 
Appellant signed another statement, in which he retracted his statement that all 
of the drugs belonged to him. Instead, Appellant stated that he did not know 
about the drugs found in the cigarette pack, and he alleged that those drugs 
belonged to Washington. Appellant also denied ownership of the scales or any 
powder residue found on the scales.
                2.     LaDonna 
Abbott
        LaDonna 
Abbott testified that she was Appellant’s ex-wife and had been riding with him 
on the date in question. Abbott testified that the arresting officer said that 
they had been pulled over for failure to signal. She stated that when Appellant 
got out of his truck, she began to look for the insurance card in her purse. 
According to Abbott, Deputy Moss told them that a detective wanted to speak with 
them and that “[thirty] minutes or so” passed before Investigator Oglesby 
arrived.
        Abbott 
testified that Investigator Oglesby asked whether she knew anything about a 
stolen washer and dryer and that she told him she did not. She stated that 
Investigator Oglesby then went to speak with Appellant for an estimated fifteen 
to twenty minutes. Eventually, Investigator Oglesby came back to ask her a few 
more questions, left again, and then returned. Abbot testified that Investigator 
Oglesby asked Washington to get out of the truck and asked her a few more 
questions about the burglary before asking her to get out of the truck.
        At 
that point, Abbott stated that Investigator Oglesby told her to leave her purse 
in the truck. She testified that she complied and that Investigator Oglesby 
looked in the truck and through her purse before asking whether a “little 
bag” and a cigarette case were hers. Abbott further testified that 
Investigator Oglesby never asked whether she had a problem with him looking in 
her purse, that she never took anything out of her purse, and that she never 
handed her purse to Investigator Oglesby. On cross-examination, Abbot testified 
that she was not sitting in the truck when Investigator Oglesby found the crack 
pipe, syringes, and crack in her purse. When asked whether she was taken aback 
by the discovery of drugs in her purse, Abbot stated, “I had no idea . . . I 
was surprised.“ Abbott also agreed that she heard Appellant yell out 
“whatever there is that she has is mine.” Abbott did not make a written 
statement, and after her arrest, she was charged with a misdemeanor related to 
her possession of the marijuana.
        C. 
Investigative Detention
        The 
Fourth Amendment to the United States Constitution provides, in part, that 
“the right of the people to be secure in their persons, houses, papers, and 
effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const. amend. IV. Warrantless 
searches are per se unreasonable unless they fall into a recognized exception. McGee 
v. State, 105 S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 124 S. 
Ct. 536 (2003). The State bears the burden of establishing an exception to the 
warrant requirement. Id.
        Consistent 
with the principles set forth in Terry v. Ohio, a police officer may stop 
and briefly detain a person for investigative purposes if the officer has 
reasonable suspicion supported by articulable facts that criminal activity may 
be afoot, even if the officer lacks evidence rising to the level of “probable 
cause.” 392 U.S. 1, 29, 88 S. Ct. 1868, 1883-84 (1968); Davis v. State, 
947 S.W.2d 240, 244 (Tex. Crim. App. 1997). An investigative detention may last 
no longer than is necessary to effectuate the purpose of the stop. Florida v. 
Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); Davis, 947 
S.W.2d at 244. Once the purpose has been satisfied, the stop may not be used for 
an unrelated “fishing expedition.” Davis, 947 S.W.2d at 243 (quoting Ohio 
v. Robinette, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., 
concurring)); James v. State, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 
2003, pet. ref’d). The propriety of the stop’s duration is judged by 
assessing whether the police diligently pursued a means of investigation that 
was likely to dispel or confirm their suspicions quickly. Davis, 947 
S.W.2d at 245; James, 102 S.W.3d at 172.
        The 
undisputed evidence in this case shows that Appellant was stopped for failing to 
signal a left turn. It is well-established that a police officer “may lawfully 
stop and detain a person for a traffic violation.” McVickers v. State, 
874 S.W.2d 662, 664 (Tex. Crim. App. 1993). The failure to signal while turning 
is a traffic violation. Tex. Transp. Code 
Ann. § 545.104 (Vernon 1999). Because Deputy Moss saw Appellant commit a 
traffic violation by failing to properly signal, his stop of Appellant was 
valid. See McVickers, 874 S.W.2d at 664; see also Hargrove v. State, 
40 S.W.3d 556, 559-60 (Tex. App.—Houston [14th Dist.] 2001, pet. 
ref’d) (stating that traffic stop made in response to unsignalled lane change 
was justified).
        Appellant 
argues that the true reason for the traffic stop was to allow Investigator 
Oglesby to question the truck’s occupants about their suspected involvement in 
a burglary. Appellant characterizes the traffic stop as “a ruse to detain” 
him. Deputy Moss made a valid traffic stop; therefore, the existence of another 
motive for the stop is irrelevant because the prohibition against pretextual 
stops has been abandoned in Texas. Garcia v. State, 827 S.W.2d 937, 944 
(Tex. Crim. App. 1992).
        We 
now turn to whether the police exceeded the scope of the investigative detention 
when they discovered the contraband in Appellant’s truck. Appellant complains 
that once the purpose of the traffic stop had been effectuated by Deputy Moss 
writing the warning citation, his continued detention became unreasonable as the 
officers kept him there for an impermissible “fishing expedition,” condemned 
by Davis and its progeny. 947 S.W.2d at 243. The trial court determined, 
after evaluating the weight and credibility of the witnesses, that “the 
traffic stop had not been completed prior to the arrival of Investigator 
Oglesby.” Because there is evidence in the record to support this factual 
determination, we must defer to the trial court’s finding. Ross, 32 
S.W.3d at 856.
        During 
the traffic stop, Investigator Oglesby questioned Abbott and asked for her 
consent to search her purse. Abbott maintained that she did not give her 
consent, but Oglesby testified that she gave her consent by handing him her 
purse. The Texas Constitution requires the State to show by clear and convincing 
evidence that the consent was valid. Maxwell v. State, 73 S.W.3d 278, 281 
(Tex. Crim. App.), cert. denied, 537 U.S.1051 (2002). We agree with the 
State that, while the record indisputably shows that Abbott did not verbally 
respond to Investigator Oglesby’s request to search her purse, the trial court 
could have determined that she nevertheless consented to its search by handing 
her purse to him in response to his request. See id.; McAllister v. 
State, 34 S.W.3d 346, 351 (Tex. App.—Texarkana 2000, pet. ref’d) 
(holding State proved by clear and convincing evidence that appellant consented 
to pat-down search by raising his hands); Simpson v. State, 29 S.W.3d 
324, 329 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) 
(holding State proved under clear and convincing standard that appellant 
consented to search of his car by nodding his head, even though appellant 
testified he had not given consent); State v. Kurth, 981 S.W.2d 410, 
414-15 (Tex. App.—San Antonio 1998, no pet.) (holding appellant consented to 
search of his briefcase by voluntarily placing it on a conveyor belt leading to 
an X-ray machine). Upon Investigator Oglesby’s discovery of the drugs and drug 
paraphernalia in Abbott’s purse, Appellant claimed ownership of the illegal 
items. At that time, the police were authorized to arrest Appellant without a 
warrant.
        Appellant 
points us to Davis v. State and argues that because the purpose of his 
traffic stop had concluded, his continued detention was unreasonable. 947 S.W.2d 
at 241. Appellant’s reliance on Davis is misplaced, however, because 
the police detained the appellant in Davis without justification after 
the reason for the traffic stop was effectuated and after the appellant twice 
refused to give his consent to a search of his vehicle. Id. at 245. Here, 
the traffic stop was in progress as Investigator Oglesby obtained Abbott’s 
consent to search her purse. The record reveals that Deputy Moss and 
Investigator Oglesby diligently pursued a means of investigation that was likely 
to dispel or confirm their suspicions quickly. Id.; James, 102 
S.W.3d at 172.
        Deputy 
Moss testified that it takes him approximately fifteen minutes to write a 
warning citation and that it took him about fifteen minutes to write 
Appellant’s citation. Investigator Oglesby testified that it only took him 
some eight to ten minutes to arrive at the scene of Appellant’s traffic stop. 
Investigator Oglesby testified that, upon his arrival at the scene, Deputy Moss 
was still in the process of writing Appellant a warning citation for the traffic 
offense. This was sufficient evidence for the trial court to conclude that the 
traffic stop had not been completed before Investigator Oglesby arrived. See 
Laney, 117 S.W.3d at 857; Ross, 32 S.W.3d at 856.
        Although 
Deputy Moss testified that Investigator Oglesby arrived “right after I had 
finished writing the citation,” the trial court was entitled to believe 
Investigator Oglesby’s recollection of the sequence of events rather than that 
of Deputy Moss. See Romero, 800 S.W.2d at 543 (recognizing trial court, 
as the fact finder in a suppression hearing, may believe or disbelieve any or 
all of any witness’s testimony). Thus, the trial court was authorized to find, 
as it did, that the traffic stop had not concluded when Investigator Oglesby 
arrived to begin his investigation.
        Accordingly, 
we hold that Appellant was lawfully detained and that the evidence complained-of 
during the suppression hearing was likewise lawfully obtained. Therefore, the 
trial court did not abuse it discretion in denying Appellant’s motion to 
suppress the physical evidence seized from his truck.
III. Conclusion
        We 
overrule Appellant’s sole issue, and we affirm the trial court’s judgment.
  
 
                                                          PER 
CURIAM
  
   
PANEL F: GARDNER, J.; CAYCE, C.J.; and MCCOY, J.
 
DO NOT PUBLISH
Tex. R. 
App. P. 47.2(b)
 
DELIVERED: August 26, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  
Appellant had filed a motion to suppress his statements and argued that motion 
in conjunction with his motion to suppress the physical evidences seized from 
his truck.  He does not now, however, challenge the trial court’s denial 
of his motion to suppress his written statements.