TURNBOW V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-180-CR

BOBBY WAYNE TURNBOW A/K/A APPELLANT

ROBERT WAYNE TURNBOW

V.

THE STATE OF TEXAS STATE

------------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Bobby Wayne Turnbow was charged with the offense of possession of between four and 200 grams of cocaine.  After the trial court denied Appellant’s written motion to suppress physical evidence that was obtained during a search of his truck, Appellant pleaded guilty pursuant to a plea agreement.  The trial court sentenced Appellant to twenty years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  Appellant raises one issue, challenging the denial of his motion to suppress.  We will affirm.

II.  Motion to Suppress

During a traffic stop, the police searched Appellant’s truck and found drugs and drug paraphernalia.  After being charged with possession of a controlled substance, Appellant filed a written motion to suppress the evidence seized in connection with this case.  The trial court conducted a pretrial suppression hearing and denied Appellant’s motion.  The court also signed findings of fact and conclusions of law related to its ruling.  In his sole issue, Appellant complains that the search of his truck was undertaken as the result of an illegal detention and that the evidence seized during that search was therefore illegally obtained and should have been suppressed.

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence for an abuse of discretion.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Oles v. State
, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  We will not overturn the trial court’s ruling unless its decision was outside the zone of reasonable disagreement.  
Salazar v. State
, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001).  We afford almost total deference to a trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based upon an evaluation of credibility and demeanor.  
Laney v. State
, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); 
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We afford the same amount of deference to the trial court’s rulings on mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor.  
Carmouche
, 10 S.W.3d at 327; 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We review de novo the trial court’s application of law to those facts in the determination of reasonable suspicion and probable cause.  
Carmouche
, 10 S.W.3d at 327; 
Guzman
, 955 S.W.2d at 89.  We will uphold the trial court’s ruling if it is correct on any theory of the law applicable to the case, even if the trial court gave the wrong reason for its ruling.  
Laney
, 117 S.W.3d at 857 (citing 
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

B.  Factual Background

At the suppression hearing, the State offered the testimony of Officers Tim Oglesby and Lowell Moss, while Appellant called his ex-wife LaDonna Abbott to testify.  Additionally, the State offered two written statements made by Appellant after he was arrested.
(footnote: 2)  Before it called its first witness, the State stipulated that Appellant’s arrest was made without a warrant.

1. The Two Officers

Deputy Lowell Moss testified that an “attempt to locate” had been put out on a red and white Ford pickup truck, which was suspected of possible involvement in a burglary.  Around 1:40 p.m. on April 11, 2002, Deputy Moss observed a truck matching the description of that vehicle in the “attempt to locate“at the intersection of 920 and Zion Hill Road in Weatherford, Texas.  Deputy Moss was behind the truck and saw the driver turn left without turning on his turn signal.  Because of the “attempt to locate” and the driver’s failure to signal, Deputy Moss turned on his lights and pulled over the truck.

Deputy Moss observed that Appellant was driving the truck and that another male and a female were riding in the truck.  Deputy Moss testified that he asked Appellant to get out of the truck and to come to his patrol car and that he decided to write Appellant a warning citation for failing to use his turn signal.  Deputy Moss testified that it took him around fifteen minutes to write the warning because he was making sure it was correctly filled out and because he ran a “1027 on [Appellant’s] driver’s license.”

During the traffic stop, Investigator Tim Oglesby arrived at the scene to question Appellant and his passengers about their possible involvement with the burglary of a washer and dryer.  While Investigator Oglesby could not remember whether he found out about the traffic stop from Deputy Moss or from overhearing it on the police radio, he testified that it took him approximately eight to ten minutes upon learning of the stop to get to the intersection where Appellant was stopped.  Deputy Moss testified that he did not know how long it took Investigator Oglesby to arrive but guessed that it was around fifteen minutes after he made the traffic stop.  Deputy Moss also stated that he did not know how Investigator Oglesby knew of the traffic stop.

Investigator Oglesby testified that when he arrived, Deputy Moss was still in the process of writing Appellant a warning citation.  Deputy Moss testified that Investigator Oglesby arrived “right after [he] had finished writing the citation,” but he could not recall at what point he received the warrants check that he had requested.  Deputy Moss testified that for the fifteen minutes it took to run the warrant check and to write the warning citation, Appellant was not free to leave.

After briefly speaking with Appellant, Investigator Oglesby went to the truck to question LaDonna Abbot and Ray Washington, who were the two passengers.  Investigator Oglesby asked Washington to get out of the truck, and he questioned Abbot about a burglary involving a stolen washer and dryer. According to Investigator Oglesby, Abbott told him that she had no personal knowledge about the burglary.  Investigator Oglesby then asked her if there was anything illegal in the truck.

While Abbott stated that she did not believe so, Investigator Oglesby testified that Abbott’s demeanor and reaction visibly changed and caught his attention.  Investigator Oglesby testified that, whereas Abbot at first had been calm, responsive, and was making eye contact, she appeared nervous, began to shake, and would not make eye contact when asked about anything illegal being in the truck.  Investigator Oglesby testified that while all of this was going on, Appellant had not yet approached his truck, indicating that he was ready to leave, but that if he had, the police would have left.

Investigator Oglesby testified that, while he spoke with Abbott, she began taking things out of her purse and setting them on the seat next to her. Thinking that Abbot’s behavior was strange and feeling concerned for his safety, Investigator Oglesby told Abbott not to reach into her purse again and asked her whether “she had any problem with [him] looking in her purse.” According to Investigator Oglesby, Abbott reacted, without saying anything, by handing her purse to him.

As he looked through Abbott’s purse, Investigator Oglesby discovered a black zipper pouch, in which he found a used glass crack pipe, syringes, and a clear plastic baggie containing “rock-type substances,” which he believed to be a controlled substance.  Investigator Oglesby testified that, at that point, he asked Abbott to get out of the truck so that he could pat her down.  He then asked her to empty her pockets and to place the contents on the back of his patrol car.  When Investigator Oglesby was handcuffing Abbott, she turned sideways, reached into her pocket, and dropped a clear cellophane wrapper on the ground.  Investigator Oglesby picked up the wrapper and, based on his experience and training, determined that the wrapper contained marijuana.

Appellant, having viewed Abbott’s arrest and the discovery of the contraband, voluntarily yelled out “Mr. Oglesby, wait, all of that is mine.”  According to Investigator Oglesby, Appellant explained that he had the drugs in his shirt pocket when Deputy Moss pulled him over and that he gave the contents of his pockets to Abbott.  Appellant told Investigator Oglesby that he had given Abbott the crack, but he insisted that the marijuana belonged to Abbott.  Washington was not arrested; however, both Appellant and Abbott were arrested and taken in for further questioning.  According to Investigator Oglesby, Appellant wanted to accept responsibility so that Abbot, who was his wife at the time, would be released.

Investigator Oglesby briefly searched the truck at the site of the traffic stop, but he did not find anything.  After a wrecker had impounded Appellant’s truck, 
Investigator Oglesby assisted with a more thorough search of the truck, which resulted in the discovery of a cigarette pack under the passenger seat. The cigarette pack contained a small crack pipe and six green ziplock baggies, with each baggie containing “a rock-type substance.”

Appellant later signed a written statement admitting that the crack cocaine was his and stating that Abbot “was not involved in the possession or sale of this drug.”  He admitted that he had given his drugs to Abbott to place in her purse and that a glass pipe and a set of scales were also his.  Four days later, Appellant signed another statement, in which he retracted his statement that all of the drugs belonged to him.  Instead, Appellant stated that he did not know about the drugs found in the cigarette pack, and he alleged that those drugs belonged to Washington.  Appellant also denied ownership of the scales or any powder residue found on the scales.

2. LaDonna Abbott

LaDonna Abbott testified that she was Appellant’s ex-wife and had been riding with him on the date in question.  Abbott testified that the arresting officer said that they had been pulled over for failure to signal.  She stated that when Appellant got out of his truck, she began to look for the insurance card in her purse.  According to Abbott, Deputy Moss told them that a detective wanted to speak with them and that “[thirty] minutes or so” passed before Investigator Oglesby arrived.

Abbott testified that Investigator Oglesby asked whether she knew anything about a stolen washer and dryer and that she told him she did not. She stated that Investigator Oglesby then went to speak with Appellant for an estimated fifteen to twenty minutes.  Eventually, Investigator Oglesby came back to ask her a few more questions, left again, and then returned.  Abbot testified that Investigator Oglesby asked Washington to get out of the truck and asked her a few more questions about the burglary before asking her to get out of the truck.

At that point, Abbott stated that Investigator Oglesby told her to leave her purse in the truck.  She testified that she complied and that Investigator Oglesby looked in the truck and through her purse before asking whether a “little bag” and a cigarette case were hers.  Abbott further testified that Investigator Oglesby never asked whether she had a problem with him looking in her purse, that she never took anything out of her purse, and that she never handed her purse to Investigator Oglesby.  On cross-examination, Abbot testified that she was not sitting in the truck when Investigator Oglesby found the crack pipe, syringes, and crack in her purse.  When asked whether she was taken aback by the discovery of drugs in her purse, Abbot stated, “I had no idea . . . I was surprised.“  Abbott also agreed that she heard Appellant yell out “whatever there is that she has is mine.”  Abbott did not make a written statement, and after her arrest, she was charged with a misdemeanor related to her possession of the marijuana.

C.  Investigative Detention

The Fourth Amendment to the United States Constitution provides, in part, that “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.”  
U.S. Const
. amend. IV.  Warrantless searches are per se unreasonable unless they fall into a recognized exception.  
McGee v. State
, 105 S.W.3d 609, 615 (Tex. Crim. App.), 
cert. denied
, 124 S. Ct. 536 (2003).  The State bears the burden of establishing an exception to the warrant requirement.  
Id
.

Consistent with the principles set forth in 
Terry v. Ohio
, a police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of “probable cause.”  392 U.S. 1, 29, 88 S. Ct. 1868, 1883-84 (1968); 
Davis v. State
, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  An investigative detention may last no longer than is necessary to effectuate the purpose of the stop.  
Florida v. Royer
, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); 
Davis
, 947 S.W.2d at 244.  Once the purpose has been satisfied, the stop may not be used for an unrelated “fishing expedition.” 
Davis
, 947 S.W.2d at 243 (quoting 
Ohio v. Robinette
, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., concurring)); 
James v. State
, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref’d).  The propriety of the stop’s duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly.  
Davis
, 947 S.W.2d at 245; 
James
, 102 S.W.3d at 172.

The undisputed evidence in this case shows that Appellant was stopped for failing to signal a left turn.  It is well-established that a police officer “may lawfully stop and detain a person for a traffic violation.”  
McVickers v. State
, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993).  The failure to signal while turning is a traffic violation.  
Tex. Transp. Code Ann
. § 545.104 (Vernon 1999).  Because Deputy Moss saw Appellant commit a traffic violation by failing to properly signal, his stop of Appellant was valid.  
See McVickers
, 874 S.W.2d at 664; 
see also Hargrove v. State
, 40 S.W.3d 556, 559-60 (Tex. App.—Houston [14
th
 Dist.] 2001, pet. ref’d) (stating that traffic stop made in response to unsignalled lane change was justified).

Appellant argues that the true reason for the traffic stop was to allow Investigator Oglesby to question the truck’s occupants about their suspected involvement in a burglary.  Appellant characterizes the traffic stop as “a ruse to detain” him.  Deputy Moss made a valid traffic stop; therefore, the existence of another motive for the stop is irrelevant because the prohibition against pretextual stops has been abandoned in Texas.  
Garcia v. State
, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).

We now turn to whether the police exceeded the scope of the investigative detention when they discovered the contraband in Appellant’s truck.  Appellant complains that once the purpose of the traffic stop had been effectuated by Deputy Moss writing the warning citation, his continued detention became unreasonable as the officers kept him there for an impermissible “fishing expedition,” condemned by 
Davis 
and its progeny.  947 S.W.2d at 243.  The trial court determined, after evaluating the weight and credibility of the witnesses, that “the traffic stop had not been completed prior to the arrival of Investigator Oglesby.”  Because there is evidence in the record to support this factual determination, we must defer to the trial court’s finding.  
Ross
, 32 S.W.3d at 856.

During the traffic stop, Investigator Oglesby questioned Abbott and asked for her consent to search her purse.  Abbott maintained that she did not give her consent, but Oglesby testified that she gave her consent by handing him her purse.  The Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid.  
Maxwell v. State
, 73 S.W.3d 278, 281 (Tex. Crim. App.), 
cert. denied
, 537 U.S.1051 (2002).  We agree with the State that, while the record indisputably shows that Abbott did not verbally respond to Investigator Oglesby’s request to search her purse, the trial court could have determined that she nevertheless consented to its search by handing her purse to him in response to his request.  
See id.
;
 McAllister v. State
, 34 S.W.3d 346, 351 (Tex. App.—Texarkana 2000, pet. ref’d) (holding State proved by clear and convincing evidence that appellant consented to pat-down search by raising his hands); 
Simpson v. State
, 29 S.W.3d 324, 329 (Tex. App.—Houston [14
th
 Dist.] 2000, pet. ref’d) (holding State proved under clear and convincing standard that appellant consented to search of his car by nodding his head, even though appellant testified he had not given consent); 
State v. Kurth
, 981 S.W.2d 410, 414-15 (Tex. App.—San Antonio 1998, no pet.) (holding appellant consented to search of his briefcase by voluntarily placing it on a conveyor belt leading to an X-ray machine)
.  Upon Investigator Oglesby’s discovery of the drugs and drug paraphernalia in Abbott’s purse, Appellant claimed ownership of the illegal items.  At that time, the police were authorized to arrest Appellant without a warrant.

Appellant points us to 
Davis v. State 
and argues that because the purpose of his traffic stop had concluded, his continued detention was unreasonable. 947 S.W.2d at 241.  Appellant’s reliance on 
Davis 
is misplaced, however, because the police detained the appellant in 
Davis 
without justification after the reason for the traffic stop was effectuated and after the appellant twice refused to give his consent to a search of his vehicle.  
Id.
 at 245.  Here, the traffic stop was in progress as Investigator Oglesby obtained Abbott’s consent to search her purse.  The record reveals that Deputy Moss and Investigator Oglesby diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly.  
Id.
; 
James
, 102 S.W.3d at 172.

Deputy Moss testified that it takes him approximately fifteen minutes to write a warning citation and that it took him about fifteen minutes to write Appellant’s citation.  Investigator Oglesby testified that it only took him some eight to ten minutes to arrive at the scene of Appellant’s traffic stop.  Investigator Oglesby testified that, upon his arrival at the scene, Deputy Moss was still in the process of writing Appellant a warning citation for the traffic offense.  This was sufficient evidence for the trial court to conclude that the traffic stop had not been completed before Investigator Oglesby arrived.  
See
 
Laney
, 117 S.W.3d at 857; 
Ross
, 32 S.W.3d at 856.

Although Deputy Moss testified that Investigator Oglesby arrived “right after I had finished writing the citation,” the trial court was entitled to believe Investigator Oglesby’s recollection of the sequence of events rather than that of Deputy Moss.  
See Romero
, 800 S.W.2d at 543 (recognizing trial court, as the fact finder in a suppression hearing, may believe or disbelieve any or all of any witness’s testimony).  Thus, the trial court was authorized to find, as it did, that the traffic stop had not concluded when Investigator Oglesby arrived to begin his investigation.

Accordingly, we hold that Appellant was lawfully detained and that the evidence complained-of during the suppression hearing was likewise lawfully obtained.  Therefore, the trial court did not abuse it discretion in denying Appellant’s motion to suppress the physical evidence seized from his truck.

III.  Conclusion

We overrule Appellant’s sole issue, and we affirm the trial court’s judgment.

PER CURIAM

PANEL F:  GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: August 26, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Appellant had filed a motion to suppress his statements and argued that motion in conjunction with his motion to suppress the physical evidences seized from his truck.  He does not now, however, challenge the trial court’s denial of his motion to suppress his written statements.